Jones, J.
The prosecution was based on Section 1655, General Code, which is a part of the juvenile act, and is as follows:
“Whoever is charged by law with the care, support, maintenance or education of a minor under the age of eighteen years, and is able to support or contribute toward the support or education of such minor, fails, neglects, or refuses so to do, or who abandons such minor, * * * upon complaint filed in the juvenile court, as provided in this chapter, shall be fined not less than ten dollars, nor more than five hundred dollars, or imprisoned not less than ten days nor more than one year, or both.”
The sole question here presented is whether the insolvency court had jurisdiction to inquire into and punish, under the provisions of that section, a father of an illegitimate child. The terms, *18 “minor,” “child” or “children,” utilized in the j'uvenile act, are used interchangeably and have the same legal signification. At common law wherever such terms have been employed they have been held to apply only to those children who are legitimate, and, whether utilized in the statutes of descent and distribution or in connection with criminal offenses, unless such terms have been so enlarged as to include illegitimate offspring, they have invariably been held as applicable only to children born in lawful wedlock.
In the case of Firmeis v. State, 61 Wis., 140, it was held that under a penal law which provided that “If any father shall wilfully abandon his child or children,” etc., such law applied only to the legitimate children of such father, and that the proof must show that the children thus abandoned were legitimate.
And in the case of Overseers of the Poor v. Overseers of the Poor, 176 Pa. St., 116, under a poor-settlement law which provided that a settlement could be gained “by any unmarried person not having a child,” etc., it was held that the word “child” referred to in the act means one who is ’ legitimate.
A comparison of Section 1655, General Code, with Section 13008, General Code, clearly evidences the fact that the juvenile section above named relates entirely to the parental duty in relation to • those children only who are legitimate and constitute the family group. The latter section is the only criminal section of the Ohio code which ex *19 plicitly deals with illegitimate children and the parental obligation to provide for them home, care, food and clothing. That section is as follows:
“Whoever, being the father, or when charged by law with the maintenance thereof, the mother, of a legitimate or illegitimate child under sixteen years of age, or the husband of a pregnant woman, living in this state, being able by reason of property, or by labor or earnings, to provide such child or such woman with necessary or proper home, care, food and clothing, neglects or refuses to do so, shall be imprisoned in a jail or workhouse at hard labor not less than six months nor more than one year, or in the penitentiary not less than one year nor more than three years.”
The fact that the legislature of the state used the term “illegitimate” in this section is .significant, and is evidence that the legislative intent was to confine parental obligation in relation to illegitimate children within the requirements of that and the succeeding section. It is significant also that the succeeding section, 13009, General Code, penalizes only the abandonment of legitimate children.
If the construction of Section 1655, General Code, urged by the state, were adopted, applying its provisions alike to legitimate and illegitimate children, then under the provisions of that section the father would be required not only to contribute to the support but to the education of the illegitimate child, and furthermore would be criminally punished if he abandoned it; whereas under Sections 13008 and 13009, General Code, referring *20 explicitly to illegitimate children, neither is their education required, nor abandonment prohibited. But abandonment of a legitimate child is expressly prohibited thereby.
The fact that both the juvenile section referred to and Section 13008, General Code, were amended by the same session of the general assembly (99 O. L., 196, Sec. 15; 99 O. L., 228, Sec. 1), and that a class of obligations was imposed in the one act and omitted in the other, seems conclusive that the support, education and abandonment referred to in the former act apply only to minor children who are legitimate. Any other construction of the juvenile section would place the illegitimate child upon the same plane as that of children born in lawful wedlock. It would require its reasonable education, where maintenance simply has been provided for by the bastardy act; and, although furnishing the full legal measure for its maintenance, care and support, it would deny the convicted parent the right of personal abandonment of an illegitimate child, which is altogether out of harmony with Section 13008, General Code. A full and complete remedy has been provided in cases of this character by indictment and prosecution under that section, which remedy should be invoked rather than the 'filing of an affidavit in the juvenile court under the juvenile act. This remedy by indictment, in cases relating to illegitimate children, was pursued in the following cases: Ogg v. State, 73 Ohio St., 59; State v. Veres, 75 Ohio St., 138; and State v. Teal, 77 Ohio St., 77.
*21 The legal obligation for the father’s support of his minor children is expressly provided by Section 7997, General Code. This parental duty attaches to children adopted under the adoption statutes and to illegitimate children acknowledged by him after intermarriage in pursuance of Section 8591, General Code.
Undoubtedly, under the provisions of the juvenile statutes, the court has plenary jurisdiction over children, legitimate or illegitimate, for protective and corrective purposes; and this jurisdiction extends to any person, parental or otherwise, who may contribute to their delinquency. We therefore hold that Section 1655, General Code, in so far as it attempts to penalize a parent for the neglect, non-support and abandonment of minor children, relates only to those minors who are legitimate. In the case of State v. Bone, 25 C. C., N. S., 447, the court of appeals evidently held a different view from the principle here announced, and in that case this court refused to certify the record for review. In this court the state filed no brief. An examination of the brief of counsel for Bone discloses that the only point presented in this court was the contention that the municipal court had no jurisdiction to render a final judgment in said case, for the reason that the affidavit was based on Section 13008, General Code, and, being a felony, the municipal court should have bound the defendant over to the grand jury. The particular question raised in this case — the illegitimacy of the child — was not called to the attention of this court so far as we were apprised by the brief filed.
*22 The judgments of the court of appeals and the insolvency court are reversed, and the plaintiff in error discharged.

Judgments reversed.

Nichols, C. J., Newman, Matthias, Johnson and Donahue, JJ., concur.